```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF RHODE ISLAND
```

_____
                                    )
CAROL A. WOLF,                      )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )    CA. No. 08-436S
                                    )
GEICO INSURANCE COMPANY,            )
                                    )
        Defendant.                  )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Plaintiff Carol A. Wolf brings this action against Defendant Geico Insurance Company, issuer of her excess auto insurance policy. In 2004, Plaintiff suffered an accident and filed a claim with Defendant. She alleges Defendant failed to promptly investigate the claim or negotiate a settlement in good faith. The Complaint asserts one count of breach of contract and one count of bad faith refusal to pay or settle a claim, and demands the policy proceeds and damages. The parties agreed to bifurcate the contract and bad faith issues for trial, but disagreed about whether to stay discovery on the bad faith claim pending resolution of the contract claim. On September 9, 2009, Magistrate Judge Martin granted Defendant's motion to stay discovery. Presently before the Court is Plaintiff's appeal of Judge Martin's Order. The Court held a hearing on the appeal on

November 6, 2009. For the reasons set forth below, the Court remands this matter to Judge Martin for further consideration.

**I. Background**

The backdrop for the immediate dispute is the relationship between breach of contract and bad faith insurance claims under Rhode Island law, which governs this diversity case. It has long been held in this state that a bad faith action does not exist until the plaintiff first establishes a breach of contract. See Lamoureaux v. Merrimack Mut. Fire Ins. Co., 751 A.2d 1290, 1293 (R.I. 2000) ("Before a bad-faith claim can even be considered, a plaintiff must prove that the insurer breached its obligation under the insurance contract."); Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249, 1261 (R.I. 2003) (reaffirming R.I. rule that breach of contract is a prerequisite to bad faith). For that reason, Rhode Island courts routinely sever bad faith claims from contract claims, stay discovery on the bad faith issue, and try the claims separately. See Skaling v Aetna Ins. Co., 799 A.2d 997, 1010 (R.I. 2002). Taking the lead from those state cases, the judges in this District have consistently followed the same practice. See, e.g., Commonwealth Land Title Ins. Co. v. IDC Props., Inc., C. A. No. 01-400T, Case Management Order, Docket # 52 (D.R.I. Sept. 7, 2006).

This custom played a powerful role in Judge Martin's decision. While not expressly basing his opinion on stare decisis, he emphasized that past practice in this District should be followed absent "explicit direction" to the contrary from a District Judge. (See Order, Docket No. 20, Sept. 9, 2009, 5-6.) Plaintiff, in her objection, seizes on this remark, and construes the holding of Judge Martin as clearly erroneous and contrary to law because it rested so heavily on past practice and not on any independent legal authority. See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 5 (1st Cir. 1999) (explaining the standard for reviewing decisions of Magistrate Judges on pretrial matters).

By his comment, Judge Martin acknowledged that he was operating in somewhat of a vacuum. As yet, no District Judge in Rhode Island has provided any thorough analysis of whether, and under what circumstances, it might ever be appropriate to combine discovery on bad faith and contract claims. Rather, the rulings appear simply to tag along with the state courts. Therein lies the problem with the Order below: through no fault of Judge Martin's, he was compelled to rely, in significant measure, on deferral to an entrenched state practice. However, as the relevant federal case law makes clear, such decisions are

not well-suited to a one-size-fits-all rule.[1]  Instead, they require a case-by-case approach, based on a firm grasp of how best to manage judicial resources when plotting pretrial discovery in disputes of this type, in light of the legal and practical challenges they present.

For these reasons, the Court here attempts to fill the void that Judge Martin brought to its attention.  It now remands the case for further consideration in light of the discussion below.

---

[1] "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Ctr. For Humanities, Inc., 518 U.S. 415, 427 (1996).  The issues presented here are procedural matters to be resolved pursuant to federal law.  Whether to order a discovery stay falls within a federal district court's "broad discretion to manage discovery." Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003); see Gillin v. United States Dep't of Army, 21 F.3d 419 (1st Cir. 1994) (finding no abuse of discretion in district court's stay of discovery).  In addition, Rule 42 of the Federal Rules of Civil Procedure authorizes bifurcation of claims for trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b).  Accordingly, in general, federal law trumps in the event of a conflict with state law on the issue of whether to stay discovery on a bad faith claim. See Riddle v. Royal Indem. Co., Civil Action No. 3:05CV-540-S, 2007 WL 542389, at *1 n.1 (W.D. Ky. Feb. 16, 2007) ("Although a federal court sitting in diversity applies the law of the forum state, the conduct of discovery and bifurcation are matters of federal procedural law.").  In any event, here there is no direct conflict between Rhode Island law and the case-by-case approach.  Skaling recognized that severance without a stay might be a viable alternative to the general stay-and-bifurcate practice. See Skaling v. Aetna Ins. Co., 799 A.2d 997, 1010 n.7 (R.I. 2002).

**II. Standard for Whether to Stay Bad Faith Discovery**

    A.   <u>General considerations</u>

Numerous federal district courts applying the rule that success on a contract claim is a prerequisite to any action for bad faith nevertheless authorize joint discovery on the two issues. <u>See, e.g.</u>, <u>Maxey v. State Farm Fire & Cas. Co.</u>, 569 F. Supp. 2d 720, 723 (S.D. Oh. 2008); <u>Cook v. United Servs. Auto. Ass'n</u>, 169 F.R.D. 359, 362 (D. Nev. 1996); <u>Gaffney v. Fed. Ins. Co.</u>, No. 5:08 CV 76, 2008 WL 3980069, at *2-3 (N.D. Oh. Aug. 21, 2008).  The primary justification cited by those courts is judicial economy.  <u>See</u> <u>Cook</u>, 169 F.R.D. at 362 ("The court finds that joint discovery on the contract issues and the bad faith claims is more convenient to the parties and would further judicial economy."); <u>Bjornestad v. Progressive N. Ins. Co.</u>, No. CIV 08-4105, 2009 WL 2588286, at *4 (D.S.D. Aug. 20, 2009) (citing judicial economy as the rationale for allowing joint discovery and trial on bad faith and contract issues); <u>Gen. Elec. Credit Union v. Nat'l Fire Ins. of Hartford</u>, No. 1:09-cv-143, 2009 WL 3210348, at *5 (S.D. Oh. Sept. 30, 2009) (same).

Joint discovery can create efficiency in three ways.  One, it avoids "discovery disputes over which documents pertain to the contract claim and which relate to the bad faith claim[]." <u>Cook</u>, 169 F.R.D. at 362.  Two, it eliminates "duplicative

discovery" should the plaintiff establish a contract claim. Gaffney, 2008 WL 3980069, at *2. Three, if a plaintiff does win on a contract claim, simultaneous discovery may "permit[] the second trial . . . to commence immediately after the first." Cook, 169 F.R.D. at 362.

However, the grant of simultaneous discovery should not be automatic. See Reliance Ins. Co. v. Wilson, No. C 90-20006 JPV, 1990 WL 751025, at *2 (N.D. Cal. Oct. 3, 1990) (finding that a stay of discovery would "serve judicial economy and potentially save the parties needless expense"). As Judge Martin noted, discovery on bad faith exposes insurers' work-product protected or privileged materials to disclosure. Defendants may be prejudiced if this occurs before it is clear whether the plaintiff can even proceed with a bad faith claim by establishing a breach of contract. See Skaling, 799 A.2d at 1010 (noting the "significant procedural protections" for insurers that a stay of discovery provides); Ferro Corp. v. Cont'l Cas. Co., No. 1:06CV1955, 2008 WL 5705575, at *5 (N.D. Oh. Jan. 7, 2008) (granting motion to stay discovery and noting that the defendant's "attorney-client communications relating to the bad faith issue are interrelated with coverage issues"); Gatewood v. Universal Underwriters Life Ins. Co., No. 5:06CV-125-R, 2007 WL 496375, at *2 (W.D. Ky. Feb. 7, 2007) (granting

6

motion to stay discovery "to avoid the product[ion] of privileged documents irrelevant to the contract action and prejudicial to the insurer").

In light of these competing considerations — judicial economy on the one hand, and prejudice resulting from the premature disclosure of work-product protected or privileged documents on the other — it is clear that the question of whether to split discovery should involve a case-by-case balancing of the interests involved. See Gaffney, 2008 WL 3980069, at *2-3 (noting that courts must weigh the "circumstances of each case," and concluding that the "balance of equities" favored joint discovery); Maxey, 569 F. Supp. 2d at 723 ("[O]n balance, the potential prejudice to Plaintiff, as well as the concerns of judicial economy, outweigh any possible prejudice to Defendants."). The Court adopts this approach here.

    B.   <u>Judicial Economy and Factual Overlap Between Bad Faith and Contract Claims</u>

Striking the right balance in any given case requires a clear grasp of how combining discovery, in whole or in part, may or may not serve judicial economy. As more fully explained below, the efficiency to be gained by allowing some or all bad

7

faith discovery to commence immediately may vary significantly from case to case.

To a large extent, the question of what will be the most efficient approach boils down to how much the subject matter of discovery on the bad faith and contract claims will overlap. Two of the efficiencies cited by courts advocating joint discovery illustrate this point. Specifically, the number of disputes over what relates to bad faith and what relates to a breach of contract will climb as the "overlap of the evidence and witnesses" between the two claims increases. Tustin v. Motorists Mut. Ins. Co., Civil Action No. 5:08CV111, 2008 WL 5377835, at *3 (N.D. W.Va. Dec. 22, 2008). Similarly, the greater the overlap, the greater the likelihood that splitting discovery into two phases will be needlessly duplicative. Conversely, the less the facts overlap, the fewer disputes will likely arise, and lesser the likelihood that the second phase of discovery will retread old ground.

True, the third source of efficiency noted above — that the bad faith trial can immediately follow the contract trial — applies in every case, no matter how much the claims overlap. This, however, will not always tip the scales in favor of joint discovery. Simultaneous discovery could actually be quite inefficient if there is little overlap. There is always the

8

risk that the Plaintiff will lose the contract claim, mooting bad faith altogether. In that case, litigation over factually-distinct bad faith issues would have created "needless expense." See Reliance Ins., 1990 WL 751025, at *2. Accordingly, where non-overlapping bad faith discovery is likely to consume significant resources, staying discovery will "serve judicial economy." Id. At the same time, as a practical matter it is important to recognize that any significant non-overlapping bad faith discovery which a court feels should properly wait until there is a determination of whether the contract has been breached will prevent a seamless trial with a single jury.

For these reasons, when weighing whether to split or combine discovery, the prudent approach is to examine what the factual basis of the bad faith claim is. This will allow for an assessment of the degree of overlap between bad faith and contract discovery, and will facilitate a more informed decision about what, if any, bad faith discovery to allow in the first phase of the case.

To prove bad faith, a plaintiff must "demonstrate an absence of a reasonable basis in law or fact for denying the claim or an intentional or reckless failure to properly investigate the claim." Skaling, 799 A.2d at 1012. "[T]he appropriate inquiry is whether . . . in the investigation,

9

evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." Id. at 1011 (citations, internal quotation marks, and alterations omitted). To defend against allegations of bad faith, "the insurer may clearly demonstrate its good faith by the introduction of affidavits and documents which explain the progress of the insured's claim." 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 204:39 (3d ed. 1999).

Broadly, then, plaintiffs' discovery requests in bad faith actions will center on the "investigation, evaluation, and processing" of the underlying claim. Skaling, 799 A.2d at 1011. Plaintiffs will probe the "reasoning" for the insurer's response. 14 Couch on Insurance § 204:28. As noted, this may require disclosure of otherwise work-product-protected material, such as the claim file. See Skaling, 799 A.2d at 1004. An advice-of-counsel defense may also justify discovery of attorney-client privileged material. See generally 2 Michael F. Aylward, New Appleman Insurance Law Practice Guide § 19.18 (2009). Where the insured seeks recovery under a "continuing bad faith" theory, she might also pursue discovery concerning the insurer's conduct during litigation itself. See, e.g., Claussen v. Aetna Cas. & Sur. Co., 754 F. Supp. 1576, 1583 (S.D.

10

Ga. 1990) (allowing the plaintiff to amend the complaint to include a bad faith claim where the defendant persisted with coverage defenses despite changes in the law that made them inapplicable).

Defendants, on the other hand, will have to rely primarily on their internal documents to "explain the progress" of the claim, 14 Couch on Insurance § 204:39, and thereby substantiate a "reasonable basis" for the actions taken. Skaling, 799 A.2d at 1012. And because bad faith entitles a plaintiff to "consequential damages for . . . emotional distress," Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980), insurers may propound discovery to test allegations about emotional pain and suffering.

In addition, for many cases, both prosecuting and defending bad faith may require expert discovery. Expert testimony on insurer practices in analogous claims-evaluation scenarios may be necessary to ascertain good faith. Experts can be particularly helpful if the reasonableness inquiry touches on issues of sufficient technical complexity.

With these general observations in mind, the Court can estimate the extent of non-overlapping bad faith discovery by considering the likelihood that it will involve (i) significant amounts of work product or privileged materials, (ii) alleged

11

continuing bad faith activity during litigation over the contract, (iii) special damages for emotional distress resulting from bad faith, and (iv) expert analyses of whether coverage and investigation decisions show bad faith given industry practice. The more a bad faith claim requires delving into one or more of these areas of discovery, the greater the resources to be conserved by staying discovery. The less a bad faith claim touches on them, the more efficient simultaneous discovery becomes.

    C.    <u>Combined Standard</u>

Weaving together the considerations discussed above, resolving the question of whether to stay discovery requires a case-by-case evaluation. The Court's broad task is to weigh the risk of prejudice to the defendant that joint discovery carries against the possible efficiency to be gained. For every case, simultaneous discovery will streamline jury service if the plaintiff wins the contract claim. However, the Court must bear in mind that combining discovery is not always economical or appropriate. To judge whether it would be efficient in a particular case, the Court should consider the likelihood that the parties will seek non-overlapping bad faith discovery in each of the areas listed above. The outcome need not be all-or-nothing. The Court may allow early discovery on some, but not

12

all, of the bad faith issues presented by a case, always keeping in mind whether doing so promotes judicial economy.

### III. Conclusion

The Court hereby VACATES the Order granting a discovery stay and REMANDS the dispute to Judge Martin for consideration in light of the guidance set forth above.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
United States District Judge
Date:  February 3, 2010

13